UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO.  06-178(CKK) |
| | : | |
| v. | : | |
| | : | |
| CHAT LOWE | : | |

MEMORANDUM OF THE UNITED STATES
IN SUPPORT OF THE PRETRIAL DETENTION
OF DEFENDANT CHAT LOWE

For the reasons set forth below, the United States of America urges the Court to order the pretrial detention of defendant Chat Lowe, pursuant to 18 U.S.C. §§ 3142(e), 3142(f)(1)(A), and 3142 (f)(1)(B),  following its weighing of the factors contained, *inter alia*, in 18 U.S.C. §§ 3142(g)(1)-(4).

As a preliminary matter, and as this Court is well aware, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. §3142(f).  The United States and the defendant may proceed by way of "proffer or otherwise," id., and hearsay is permitted.  E.g., United States v. Winsor, 785 F.2d 755, 756 (9th Cir. 1986).  Moreover, at a detention hearing, the United States is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use." United States v. Martir, 782 F.2d 1141, 1145 (2d Cir. 1986).  "The defendant may not use a pretrial detention hearing as a trial on the underlying indictment or as a method for getting discovery from potential witnesses . . . .  Nor may the defendant require the government to divulge its confidential sources in such a proceeding." United States v. Williams, 798 F. Supp. 34, 36 (D.D.C. 1992) (Sporkin, J.).  If there is any examination, federal courts have limited that examination to the disputed issues,

1

since the detention hearing should neither be turned into a mini-trial nor used as a subterfuge to obtain discovery. See, e.g., United States v. Suppa, 799 F.2d 115, 120 (3rd Cir. 1986). Finally, without a defense proffer that the United States's information is incorrect, the defendant is not permitted to challenge the government's evidence. United States v. Winsor, supra, 785 F.2d at 757.

## Summary of the Case

On June 20, 2006, a federal grand jury returned an indictment charging the defendant with two violations of 18 U.S.C. 2332a(a)(3), Threats Against Property Owned, Leased, or Used by the United States, and two violations of 22 D.C. Code § 1810, Threatening to Injure a Person or Damage His Property. These charges stem from threats the defendant made on two successive days in July 2005 to blow up the E. Barrett Prettyman United States Courthouse (hereinafter "the courthouse"). Defendant made these threats while on supervised release after having served a 39-month sentence for assaulting an Assistant United States Attorney and a Metropolitan Police detective with a hammer.

## Factors to be Considered

When, as in this case, pre-trial detention is sought, 18 U.S.C. § 3142(g) provides that the following factors should be considered by the judicial officer charged with resolving whether or not there are conditions of release that will reasonably assure both: (a) the required appearance(s) of the defendant; and (b) the safety of any other person(s) and the community:

   (1)   The nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;

   (2)   the weight of the evidence against the person;

   (3)   the history and characteristics of the person, including –

      (A)    the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug and alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

      (B)    whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

  (4)    the nature and seriousness of the danger to any person or the community....

See United States v. Singleton, 182 F.3d 7, 9 (D.C. Cir. 1999) (existence of one of six identified circumstances triggers a detention hearing, at which hearing court should consider several enumerated factors to impose detention until trial).

The Nature and Circumstances of the Offenses Committed

The charges in the indictment relate to threats to blow up the federal courthouse. They are clearly "crimes of violence" for purposes of section 3142.[1] These threats were particularly disturbing to judges and court personnel familiar with the defendant's criminal history, which at the time, included convictions in 2002 for assaulting an AUSA and assaulting a Metropolitan Police detective, as well as multiple arrests and convictions between 1995 to 1997 for obstruction of police officers.

The first threat charged in the indictment occurred on July 11, 2005, while defendant Lowe was in the hallway on the fifth floor of the courthouse. A courthouse employee saw Lowe talking to himself. According to the witness, Lowe sounded angry and said "this is a new

---

[1] A "crime of violence" for purposes of section 3142 is defined by 18 U.S.C. § 3156(a)(4) as "an offense that has as an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another" or "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."

3

building with new judges, I'll kill a few judges." Lowe then went to the Clerk of Court's office for the United States Court of Appeals for the District of Columbia Circuit, also located on the fifth floor. He entered the office and requested assistance from an employee there. He was upset and angry because he said he didn't understand the court's orders. He stated that he thought there was a conspiracy between the courts and the judge. The employee advised Lowe to contact his case administrator and tried to get him to leave the office. Lowe continued to rant and rave, and stated that he would "get [his] people in Florida to handle this." Lowe eventually left the office.

On July 12, 2005, Lowe returned to the courthouse and went to the Court of Appeals intake counter on the fifth floor. At the intake counter, he was assisted by a case administrator. As the administrator looked up Lowe's information in the computer, Lowe ranted and raved about the judicial system, and said "I'll blow this damn building up." The case administrator replied, "you need to blow your butt out the door." The defendant did not leave. The case administrator then called another employee to assist the defendant. The second employee did not hear the initial threat but heard the defendant make angry statements about how the police were harassing him and how he was going to "take matters into my own hands." The second employee nonetheless proceeded to assist the defendant and obtained information for the defendant about the defendant's pending appeal, after which the defendant left.

The court employees who heard these threats subsequently reported the threats to their supervisors and eventually to the United States Marshals Service, which conducted a formal threat assessment and advised the FBI. United States District Court Judge Ellen Segal Huvelle, who had presided over defendant's trial for assaulting the AUSA and the MPD detective, and was continuing to oversee defendant's supervised release in that case, was also advised of the

threats, as was the Chief Judge of the District Court and judges on the U.S. Court of Appeals.

On July 21, 2005, Judge Huvelle ordered that the defendant's supervised release be revoked for failure to participate in mental health treatment, which was a required condition of his supervised release. Judge Huvelle ordered that the defendant be imprisoned for an additional period of 12 months.

On July 25, 2005, Chief Judge Thomas F. Hogan sent a letter to the director of the Federal Bureau of Prisons, informing him that the defendant had repeatedly threatened the staff and judges of the courts and that in light of his conduct, he was requesting that the Bureau of Prisons notify the court in advance of Mr. Lowe's release from custody "so that appropriate security measures can be taken."

Weight of Evidence

The evidence that the defendant made the charged threats and that they were taken seriously by court personnel is very strong.

The History and Characteristics of Defendant

The defendant has a criminal history that makes the charged threats even more disturbing than they may have initially appeared in isolation. As noted above, in January 2002, he assaulted an Assistant United States Attorney with a hammer in front of 501 4th Street, NW. When an MPD detective who observed the attack tried to put the defendant under arrest, the defendant swung the hammer at the detective, hitting him in the face, before he being subdued by several officers. He was charged with assaulting a federal officer and assaulting a police officer. On May 7, 2002, after a bench trial, the defendant was found guilty of Assaulting a Federal Employee and Simple Assault. On August 9, 2002, defendant was sentenced to 39 months in custody and one year of supervised release. His conditions of supervised release included a

5

requirement that he participate in a mental health treatment program, which he refused to do.

Prior to Lowe's criminal conduct in Washington, DC, he had an extensive criminal history in Macon, Georgia, including multiple convictions for obstructing police officers during the period 1995 through 1997.[2]

---

[2] The underlying facts of these prior arrests and convictions reveal a pattern of angry, threatening, and assaultive conduct, that further confirms the defendant's dangerousness:

**Arrest Date:** 08/21/1995
**Charge:** Criminal Trespass
**Jurisdiction:** Macon, Georgia
**Sentence:** Probation 1 Year / Fine: $250
**Summary of Facts:** Mr. Lowe approached a Checkers Restaurant and ordered a coffee. He was informed that the restaurant was closed, became angry and started cursing. An employee of the restaurant then threw a cup of hot coffee in Mr. Lowe's face, upon which Mr. Lowe threw a brick at the Checker's sign, causing approx. $100 damage. The restaurant employee was arrested for simple assault, Mr. Lowe for criminal trespass.

**Arrest Date:** 11/09/1995
**Charge:** Misdemeanor Obstruction
**Jurisdiction:** Macon, Georgia
**Sentence:** Confinement: 11 Months / Probation: 1 Year / Fine: $300
**Summary of Facts:** Mr. Lowe came upon a police roadblock, parked his car and ran off. When ordered to stop by an officer, he refused, placed his hands on the officer, shoving the officer out of his way. Once taken to jail and released from his handcuffs, Mr. Lowe again placed his hands on the officer and shoved him.

**Arrest Date:** 07/27/1996
**Charge:** Obstruction of Officers
**Jurisdiction**: Macon, Georgia
**Sentence:** Confinement: 10 Months / Probation: 1 Year / Fine: $200
**Summary of Facts:** Mr. Lowe threatened two officers with a beer bottle as they approached. He then fled and was placed under arrest.

**Arrest Date:** 04/14/1997
**Charge:** Terroristic Threats
**Sentence:** Charges dropped
**Summary of Facts:** Mr. Lowe entered the office of the Mayor of Macon, Georgia, and stated to several women and the mayor, "Y'all will listen to me when I come in here and shoot you bitches."

6

Perhaps most disturbing, and most telling though, is the defendant's behavior when he was arrested on June 21, 2006, by agents from the Federal Bureau of Investigation. While in transit to the FBI's Washington Field Office, the defendant told Special Agent Monica Patton, "I'll cut your titties off." He also told SA Patton and her two colleagues, Special Agents Daniel Bremer and Joseph Lowery that "I've got friends down in Florida to take care of you." He repeatedly referred to Agent Patton as a "white bitch" and a "pussy." He further stated to the agents, "I'll knock on your front door and violate you and your mammy;" "You've all got family and kids. I'll find you, knock on your front door, and teach you a lesson;" and "You all won't know I'm coming." And finally, he again threatened the judiciary, stating: "I'll take care of these judges too."

## Conclusion

The Government has established that Mr. Lowe is a dangerous individual, that his offenses are "crimes of violence," that his crimes are punishable by life imprisonment, and that the weight of the Government's evidence against Mr. Lowe is very strong. As such, the Government has established by clear and convincing evidence that Mr. Lowe is a danger to the community, and because there are exist no condition of release, or combination of conditions of

---

**Arrest Date:** 09/03/1997
**Charge:** Obstruction of Officers
**Jurisdiction:** Macon, Georgia
**Sentence:** Probation 4 Years
**Summary of Facts**: Officers were contacted when Mr. Lowe refused to leave a locality belonging to the Division of Family and Child Services (DFCS) for Macon, Georgia. When an officer attempted to escort Mr. Lowe out, Mr. Lowe struck the officer in the face with his fist, which then led to an altercation which resulted in the dislocation of the officer's shoulder and the transportation of both the officer and Mr. Lowe to medical facilities to receive treatment.

release, that will reasonably assure the safety of the community, Mr. Lowe should be preventatively detained.

                    Respectfully submitted,

                    KENNETH L. WAINSTEIN
                    United States Attorney
                    Bar No. 451058

                    _____
                    Stevan E. Bunnell
                    Assistant United States Attorney
                    D.C. Bar No. 414398
                    555 4th Street, NW  #5842A
                    Washington, DC 20001

                    _____
                    Catherine K. Connelly
                    Assistant United States Attorney
                    Mass.  Bar No. 649430
                    555 4th Street, NW  #4844
                    Washington, DC 20001

CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that I caused a copy of the foregoing to be served upon the attorneys for the defendant, Mary Petras and Ketanji Brown Jackson this 28th day of June, 2006.

_____
Catherine Connelly
Assistant United States Attorney