```
              UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA :
                         :
                         :
         v.              :     06-CR-178 (JMF) (CKK) (RCL)
                         :
                         :
CHAT LOWE                :
```

DEFENDANT'S MEMORANDUM IN OPPOSITION
TO THE GOVERNMENT'S REQUEST FOR PRETRIAL DETENTION

Mr. Chat Lowe, the defendant, through undersigned counsel, respectfully requests that this Honorable Court deny the government's request for pretrial detention and set reasonable conditions of release.  Specifically, Mr. Lowe requests that the Court release him to return to the halfway house where he was serving the remainder of a sentence imposed by the Honorable Ellen Segal Huvelle.

In support of this motion, counsel states:

1.  Mr. Lowe is charged by indictment with two counts of threats against property owned, leased, or used by the United States, in violation of 18 U.S.C. 2332a(a)(3), and two counts of threatening to injure a person or damage his property, in violation of 22 D.C. Code § 1810.  The charges arise from incidents that allegedly occurred almost a year ago, on July 11 and 12, 2005.

2. Although the offenses allegedly occurred in July of 2005, the government did not charge Mr. Lowe or seek an indictment until June 20, 2006. Mr. Lowe was arrested the following day. At his initial appearance on June 22, 2006, the government asked that Mr. Lowe be detained without bond pending trial because the charged offenses are defined as crimes of violence. Even though the government had all of its evidence for almost a year, and even though the government knew that Mr. Lowe would be arrested on June 21st and presented before the Court on June 22nd, the government maintained that it was not prepared to go forward with the full detention hearing and moved to continue the hearing for three days. The Honorable John M. Facciola granted that request and continued the matter until June 26, 2006. At the hearing on June 26, 2006, Judge Facciola determined that it was appropriate to recuse himself but asserted a "necessity" to act on the government's request and ordered Mr. Lowe held without bond. On June 27, 2006, this Court issued an order directing that Mr. Lowe's detention hearing reconvene on June 29, 2006.

3. The history of this matter, as well as Mr. Lowe's detention at a Federal Medical Center during the last year, demonstrate that no credible threat was made and that Mr. Lowe would not be a danger to the community if released to return to the halfway house.

4. Mr. Lowe came to the District of Columbia in 2001 in order to file a civil rights claim with the Department of Justice, arising out of an arrest and prosecution in Georgia.

5. On January 31, 2002, Mr. Lowe was working for a construction company. After work that day, he was walking near the United States Attorney's Office when Assistant United States Attorney William O'Malley bumped into him. As a result of the incident that ensued, Mr. Lowe was charged with assaulting a federal officer (Mr. O'Malley) and the police officer who intervened to assist Mr. O'Malley. Following a bench trial, Judge Huvelle found Mr. Lowe guilty and sentenced him to 39 months of incarceration to be followed by one-year of supervised release.

6. After serving the prison term, Mr. Lowe was released from a correctional facility in Florida and ordered to report to the District of Columbia to begin his period of supervised release. He reported to the United States Probation Office in the District of Columbia, as directed.

7. When establishing the conditions of Mr. Lowe's supervised release, Judge Huvelle had ordered that Mr. Lowe participate in drug testing and mental-health treatment. Mr. Lowe explained to his Probation Officer that he did not believe those conditions were necessary because he had never tested positive for drugs and he had received a favorable mental-health

evaluation while incarcerated.  Mr. Lowe indicated that he wanted to address Judge Huvelle to seek a modification of the conditions of his supervised release.  The probation officer issued a violation report and a hearing was scheduled before Magistrate Judge Facciola on June 22, 2005.

8.  On June 22, 2005, Mr. Lowe appeared for the hearing before Magistrate Judge Facciola.  The matter was re-scheduled for July 19, 2005.

9.  The government alleges that the incidents giving rise to the charged offenses occurred in the courthouse on July 11 and 12, 2005.  According to the government, Mr. Lowe allegedly went to the Court of Appeals Clerk's Office in regard to one of his pending civil cases.  The office had just closed and he was told to return the next day.  The government alleges that Mr. Lowe was angry and was overheard talking to himself while standing next to the bank of elevators.  According to the government, while talking to himself, Mr. Lowe made threatening statements regarding the courthouse and the judges of this court.  According to the government's allegations, Mr. Lowe left the building without incident and returned to the clerk's office the following day (July 12, 2005), when, the government alleges, Mr. Lowe spoke with the clerks about one of the cases he had filed.  Mr. Lowe allegedly asked questions about his appeal and became confused and frustrated with the answers.  According to the government,

Mr. Lowe allegedly yelled and caused a disturbance, at some point during which he purportedly said, "I'll blow this damn building up." The government alleges that Mr. Lowe ultimately left the clerk's office, and the building, without further incident.

10. Mr. Lowe was not arrested following the alleged incident on July 11, 2005, nor was he arrested when he allegedly returned to the courthouse on July 12th. He was not arrested or charged with the alleged offenses on July 13, 14, 15, 16, 17, 18--or any other day in 2005.

11. On July 19, 2005, Mr. Lowe appeared again before Judge Facciola in regard to the supervised release matter. Prior to the hearing, Judge Facciola met with Mr. Lowe's Probation Officer and two Deputy United States Marshals, who informed the court of the alleged incidents on July 11 and 12. During the hearing, the government raised the alleged threats and asked Judge Facciola to hold Mr. Lowe without bond pending a hearing before Judge Huvelle. Although he had heard from the Deputy U.S. Marshals, Judge Facciola did not hold Mr. Lowe without bond; rather, he modified the conditions of Mr. Lowe's supervised release to include a stay away from the courthouse, except for court appearances.

12. On July 21, 2005, Mr. Lowe appeared for his scheduled hearing before Judge Huvelle. Judge Huvelle denied Mr. Lowe's request to modify the conditions of his supervised release and,

because Mr. Lowe had not complied with the condition to participate in mental-health treatment, revoked his supervised release. Judge Huvelle sentenced Mr. Lowe to a 12-month term of incarceration.

    13.  The Bureau of Prisons designated Mr. Lowe to a Federal Medical Center in Massachusetts. While there, Mr. Lowe met regularly with mental health professionals.

    14.  On June 15, 2006, Mr. Lowe was released from the Federal Medical Center in Massachusetts and told to take a bus to the District of Columbia and report to a halfway house. Mr. Lowe did so.

    15.  On June 20, 2006, the government sought and obtained the indictment in the instant matter. The government intentionally delayed seeking the indictment until after Mr. Lowe had served the sentence imposed by Judge Huvelle for no other reason than to extend Mr. Lowe's incarceration and to deny him the right to contest these charges in a timely manner.

    16.  The government arrested Mr. Lowe at the halfway house on June 21, 2006--nearly one year after the alleged offenses. At the detention hearing on June 26, 2006, the government presented the testimony of one of the agents who was involved with Mr. Lowe's arrest. According to the agent, when Mr. Lowe was called to the halfway house business office and arrested by federal agents he was surprised and very upset. The agent testified that

Mr. Lowe asked to see the arrest warrant but that it was not shown to him. The agent also testified that Mr. Lowe resisted and made threatening statements. Mr. Lowe denies making threats, and any statements he made must be taken in the context of the situation created intentionally by the government. As noted above, Mr. Lowe had been released from incarceration six days prior to the arrest and told that he would be serving the remainder of his 12-month sentence in a halfway house. He was looking forward to beginning his life again. When the agents arrived and told Mr. Lowe that he was under arrest, he was understandably shocked. He had been incarcerated for almost a year and could not imagine why he was being arrested or what he could be charged with. When the agents eventually told him that he was being charged with making threats against the courthouse, Mr. Lowe was shocked again. The government's strategic decision to wait to charge and arrest Mr. Lowe until shortly after his release to a halfway house was devastating to him. Moreover, in light of Mr. Lowe's well-known belief that the government is conspiring to deprive him of his rights, it certainly came as no surprise to the government that its strategic decision to wait to charge Mr. Lowe until just when he believed he would be a free man was traumatic for him.

    17. As Mr. Lowe calmly explained to Judge Facciola at the hearing on June 26, he means no harm to anyone. He simply wants

the opportunity to return to the halfway house and to begin working to earn a living.

18. The government should not now be given the benefit of pre-trial detention when Mr. Lowe was not arrested or detained on these charges back when the alleged offenses took place and the government intentionally chose not to pursue these charges in a timely manner.

19. Furthermore, to the extent that the government is seeking Mr. Lowe's detention while the recusal matter is pending, the government was fully aware that the nature of its charges would raise concerns regarding recusal but made no effort to address the issue prior to arresting Mr. Lowe. Specifically, the government knew at the time that the indictment was returned that the alleged victims of the charged offenses include every judge of this Court, but it did nothing to alert the Court that a judge from another district would be necessary. Moreover, at Mr. Lowe's initial appearance on June 22, 2006, the government knew of the additional alleged threats it claims were made when Mr. Lowe was arrested at the halfway house, but the government did not tell Mr. Lowe's counsel or Judge Facciola of these alleged threats while Judge Facciola was first considering recusal. Without that information, counsel for Mr. Lowe did not object at that time to Judge Facciola proceeding. At the hearing on June 26th, the government finally disclosed this additional

information and Judge Facciola reasonably decided to recuse himself. Because of the manner in which the government has prosecuted this case, Mr. Lowe has now been held with bond for a week without appearing before a judge who is not an alleged victim of the conduct alleged by the government. As this Court knows, pre-trial detention should not be imposed, or extended, solely because of the government's strategic tactics and inexcusable lack of foresight.

20.  The fact that Mr. Lowe was not arrested or detained at the time that the offenses alleged in the indictment allegedly occurred demonstrates that it was the contemporaneous view of government officials that Mr. Lowe was not a danger in July of 2005. Mr. Lowe's incarceration and treatment at the Federal Medical Center for the past year and his continued detention at the halfway house provide assurances that Mr. Lowe would not be a danger if released now.

WHEREFORE, for the foregoing reasons, and such other reasons as may be presented at a hearing in this matter, Mr. Lowe respectfully requests that the Court deny the government's request for pretrial detention.

Respectfully submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER

/s/
_____
MARY MANNING PETRAS
Assistant Federal Public Defender

/s/
_____
KETANJI BROWN JACKSON
Assistant Federal Public Defender

625 Indiana Avenue, N.W., Suite 550
Washington, D.C.  20004
(202) 208-7500

**CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that I caused a copy of the foregoing to be served upon Assistant United States Attorney Catherine Connelly this 29th day of June, 2006.

                                            /s/
                                 Ketanji Brown Jackson